UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

DAVID ANDERSON,

                         Plaintiff,

                                                    **<u>MEMORANDUM & ORDER</u>**
              v.                                        15−CV−6720 (PKC)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                         Defendant.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

        Plaintiff David Anderson ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking judicial review of the Social Security Administration's ("SSA") denial of his

claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  The

parties have cross-moved for judgment on the pleadings.  (Dkt. 9.)  Plaintiff seeks reversal of the

Acting Commissioner of Social Security's ("Commissioner") denial of benefits, and the granting

of other relief the Court may find just.  The Commissioner seeks affirmance of the denial of

Plaintiff's claims.  For the reasons set forth below, the Court DENIES the Commissioner's motion

for judgment on the pleadings and GRANTS the Plaintiff's cross-motion.

## BACKGROUND

**I.      PROCEDURAL HISTORY**

        Plaintiff filed applications for DIB and SSI on September 28, 2012.  (Tr. 142.)[1]  Plaintiff

claimed disability beginning November 30, 2007, due to psychosis and major depressive disorder.

---

[1] "Tr." refers to the Administrative Transcript.  Page references are to the continuous
pagination of the Administrative Transcript supplied by the Commissioner.

(Tr. 142-43.)  On January 30, 2013, SSA denied both of Plaintiff's claims.  (Tr. 46–51.)  Plaintiff

requested a hearing before an administrative law judge ("ALJ") on March 5, 2013.  (Tr. 52.)  ALJ

Mark Solomon held a hearing on May 6, 2014, where Plaintiff, accompanied by his non-attorney

representative,[2] and a vocational expert testified.  (Tr. 29–43.)  About a month later, by a decision

dated June 3, 2014, the ALJ denied Plaintiff's claims.  (Tr. 15–25.)  On July 7, 2014 an attorney

was appointed to represent Plaintiff.  (Tr. 12.)  The decision of the ALJ became the final decision

of the Commissioner on November 10, 2015, when the Appeals Council denied Plaintiff's request

for review.  (Tr. 1–4.)  Plaintiff timely filed this action on November 23, 2015.  (Dkt. 1.)

## II.    MEDICAL EVIDENCE

### A.  Treating Physicians

#### 1.  St. Luke's-Roosevelt Hospital ("St. Luke's") Emergency Department

Plaintiff visited the emergency department at St. Luke's on September 18, 2012,

complaining of depression.  (Tr. 183–85.)  Glenna Edwards, RN, assessed Plaintiff and reported

that he was alert and oriented in three dimensions, and had not recently tried to hurt himself.  (Tr.

184.)  She reported that Plaintiff denied suicidal/homicidal ideation but heard voices singing.  (*Id.*)

She wrote that his emotional state was a barrier to his education.  (*Id.*)  Plaintiff disclosed that two

of his brothers had schizophrenia.  (*Id.*)

Dr. Michael Tanzer diagnosed Plaintiff with major depression.  (Tr. 185.)  He discharged

Plaintiff in stable condition, but noted that acuity was Level III, which meant urgent.  (*Id.*)

On September 24, 2012, Plaintiff returned to St. Luke's, complaining about depression and

paranoia.  (Tr. 187.)  Steven Curry, RN, assessed Plaintiff as alert and oriented in three dimensions,

---

[2] Although Defendant states that Plaintiff appeared "with his attorney," the record refers to Mr. O'Connell as a "representative," and he stated at the hearing that he worked for the New York City Human Resources Administration.  (Tr. 31.)

with cooperative behavior. (*Id.*) RN Curry reported that Plaintiff had a history of depression, and that his emotional state was a barrier to his education. (*Id.*) Once again, Plaintiff denied having tried to hurt himself or having suicidal thoughts. (*Id.*) Plaintiff reported having been on medication for sleep and paranoia, but could not remember the name of the medications. (*Id.*) Dr. Rachna Kenia diagnosed Plaintiff with psychotic reactive depression. (Tr. 186.) She admitted him to the psychiatric ward, where he appeared to stay until September 27, 2012. (Tr. 187, 190.)

2.  Don Cohen, LCSW

Upon Plaintiff's discharge from St. Luke's on September 27, 2012, Don Cohen, LCSW, wrote a letter stating that Plaintiff had been in the hospital's care from September 24 through September 27, 2012, but was "fit and able to return to work immediately." (Tr. 190.)

3.  Dr. Daniel Cohen and Deborah Morgan, LCSW

On October 10, 2012, Plaintiff met "briefly" with Deborah Morgan, LCSW, at St. Luke's. (Tr. 203.) LCSW Morgan wrote that Plaintiff was able to engage, that his affect was restricted, and that his mood was normal. (*Id.*) She wrote that Plaintiff lived with his sister, who helped him with money for food. (*Id.*) LCSW Morgan offered to write a letter in support of Plaintiff's SSI application. (*Id.*)

In a letter dated October 11, 2012, Plaintiff's treating psychiatrist, Dr. Daniel Cohen, and LCSW Morgan, his treating social worker, wrote that Plaintiff was receiving outpatient psychiatric services at St. Luke's with a diagnosis of Major Depressive Disorder, Recurrent with Psychotic Features. (Tr. 191.) Plaintiff's recent hospitalization had been a result of "bizarre thought, auditory hallucinations, mood and sleep disturbance." (*Id.*) As a result, Plaintiff had been prescribed 20mg of Zyprexa and 10mg of Prozac, and was receiving monthly supportive therapy from both Dr. Cohen and LCSW Morgan. (*Id.*) Dr. Cohen and LCSW Morgan concluded that

Plaintiff had no benefits, and they "strongly recommend[ed] he be awarded SSI based on the severity of his mental illness." (Tr. 191.)

On November 14, 2012, Plaintiff visited Dr. Cohen at St. Luke's. (Tr. 193.) In a record of the same date, Dr. Cohen wrote that Plaintiff likely had schizophrenia, and had reported a ten-year decline and "depression," including auditory hallucinations. (*Id.*) Plaintiff denied having attempted suicide, and admitted to cocaine and cannabis use in the past. (*Id.*) Dr. Cohen described Plaintiff as having "[n]o evidence of acute psychosis or depression" and "sleeping well." (*Id.*) His diagnoses were listed as "Major Depressive Disorder, Recurrent Type with Psychotic Features" as of October 11, 2012, and "Schizophrenia, Paranoid Type" as of November 14, 2012. (Tr. 197.) In the section titled "Comprehensive Mental Status," Dr. Cohen indicated that Plaintiff had no threatening behavior, appropriate eye contact, no signs of agitation, and appropriate ambulation. (Tr. 194.) He also indicated on the form that Plaintiff's mood was both "pleasant" and "tense," and his affect was "blunted." (*Id.*) He wrote that Plaintiff was able to concentrate, had intact judgment and memory function, and insight. (Tr. 195.) In addition, Dr. Cohen wrote that Plaintiff was "[i]mproving, stable on medications" and should continue with his medications and follow up with Dr. Cohen and LCSW Morgan in a month. (Tr. 197–98.) Dr. Cohen wrote that Plaintiff had not reached "optimum improvement." (Tr. 98.)

Also on November 14, 2012, Plaintiff met again with LCSW Morgan. (Tr. 199.) He reported that the bus and subway being out of service was a bit depressing for him. (*Id.*) He denied auditory hallucination of voices, but stated that he heard music sometimes. (*Id.*) He did not present with any delusions during the session, and appeared to be engaging in treatment with LCSW Morgan and Dr. Cohen. (*Id.*) Plaintiff spoke about reading the newspaper and watching the news, and he agreed to try "making small steps to lif[t] his mood" such as going to the library and taking

walks. (*Id.*) LCSW Morgan noted no significant changes in his mental status or behavior, wrote that Plaintiff was sleeping "ok" and reported taking his medication. (*Id.*) She also wrote that he did not have thoughts of self-harm or suicide. (*Id.*)

Dr. Cohen filled out a Psychiatric Medical Report on March 21, 2013. (Tr. 234.) He again reported that Plaintiff had paranoid schizophrenia and was on Prozac and Zyprexa. (*Id.*) Plaintiff appeared calm, pleasant, and cooperative. (*Id.*) Plaintiff reported having audio hallucination in which he heard birdcalls. (*Id.*) His mood was "depressed" and his affect was "constricted/blunted." He also reported that Plaintiff had "below average" sensorium and intellectual functions with regard to information. (Tr. 235.) His memory was intact, his attention and concentration were adequate, and he was oriented in three dimensions. (*Id.*) Regarding activities of daily living, Plaintiff stated that he spent his days reading, watching television, and going for walks, and he had limited to no social interaction. (Tr. 236.)

Dr. Cohen reported in the March 21, 2013 Psychiatric Medical Report that Plaintiff was "unable" to function in a work setting. (Tr. 236.) In his Medical Source Statement of Ability to Do Work-Related Activities (Mental) Report of the same date, Dr. Cohen stated that Plaintiff had a moderate restriction in understanding and remembering simple instructions, a marked restriction in carrying out simple instructions, and extreme restrictions in his ability to make judgments on simple work-related decisions, to understand and remember complex instructions, and to make judgments on complex work-related decisions. (Tr. 238.) He reported that Plaintiff had moderate restrictions in interacting appropriately with the public, marked restrictions in interacting appropriately with supervisors and co-workers, and extreme restrictions responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 239.)

### B. Consultative Source: G. Kleinerman

Psychiatric medical consultant G. Kleinerman[3] filled out a Psychiatric Review Technique report on December 20, 2012, indicating that Plaintiff was being evaluated for "Schizophrenic, Paranoid and other Psychotic Disorders" as well as "Affective Disorders." (Tr. 206.) Kleinerman checked off the box indicating that "A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria" in the form. (Tr. 208.) He noted that Plaintiff's primary diagnosis was "Schizophrenia, paranoid type" and this diagnosis was substantiated by pertinent symptoms, signs, and laboratory findings, although there were currently no signs of psychosis. (*Id*.) Kleinerman also noted that Plaintiff's affect disorder, Major Depressive Disorder, was also substantiated. He wrote that Plaintiff acknowledged cocaine and cannabis use. (Tr. 214.) Plaintiff was assessed to only have "mild" limitations in restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. (Tr. 216.) Kleinerman reported that the evidence did not establish the presence of paragraph C criteria of the listings. (Tr. 217.)

On December 20, 2012, Kleinerman also filled out a Mental Residual Functional Capacity Assessment, which indicated that Plaintiff was not significantly limited in any of the designated categories, but suffered a moderate limitation in "the ability to set realistic goals or make plans independently of others." (Tr. 222.) After briefly summarizing the reports from Dr. Cohen and LCSW Cohen, Kleinerman concluded that Plaintiff "retains the capacities for remembering, understanding and carrying out instructions, for relating appropriately under conditions of reduced interpersonal contact, and for exercising judgment appropriately in the workplace." (Tr. 223.)

---

[3] The record does not indicate whether Kleinerman is a physician, merely noting "psychiatry" next to his name. (Tr. 206.)

III.    **NON-MEDICAL EVIDENCE**

   **A. Plaintiff's Self-Reporting and Testimony**

   1.  October 17, 2012 Disability Report (SSA Field Office)

On October 17, 2012, A. Ferruggia, the representative from the SSA field office, had a face-to-face interview with Plaintiff. (Tr. 139.) In the "observations" section of the report, Ferruggia indicated that Plaintiff had difficulty with "answering", but none of the other listed difficulties. (Tr. 140.) Ferruggia also noted that Plaintiff was dressed appropriately and was well-mannered, that he had problems recalling certain information and dates from the past, and that he had stated that his memory was "not too good." (*Id.*)

   2.  October 19, 2012 Disability Report (Adult Form)

In his October 19, 2012 Disability Report form, Plaintiff indicated that his highest level of education was completion of the eighth grade. (Tr. 144.) In the ten years leading up to his disability, Plaintiff worked in part-time and full-time positions. Plaintiff worked as a security guard from 1997 until 2007 and as a waiter/server from 1997 to 1998. (*Id.*) Plaintiff was told not to return to his most recent job on November 30, 2007, and he believes it was due to his disability. (Tr. 143.) Plaintiff reported that he interviewed for a job with a security company in 2012 through Career and Educational Consultants, and believes he was not hired due to his disability, which subsequently increased his depression. (Tr. 148.) He reported taking Fluoxetine and Olanzapine for his psychosis, and Lorazepam for his Insomnia. (Tr. 145.)

   3.  November 5, 2012 Statement of Activities of Daily Living

In his November 5, 2012 Statement of Activities of Daily Living form, Plaintiff reported that he did not drive because he did not own a car. (Tr. 150.) He was able to shop for food every

few days and for clothing about once a month if he had the money. (*Id.*) He stated that he was able to pay bills, count change, and handle a savings account, and that his ability to handle finances had not changed as a result of his condition. (*Id.*) Each day, Plaintiff watched television, looked at pictures in the newspapers, read, and went for walks. (Tr. 150, 153.) He also went to church about twice a month, which was the only time he spent with others. (Tr. 151.) Although he reported no problems getting along with family, friends, neighbors, or others, he reported that his condition affected his social activities because his "confidence level is not what it used to be." (Tr. 151.) Plaintiff wrote that before his illness, he was able to be more independent and function properly, but that he could not do those things anymore. (Tr. 153.) He lived with his sister and did not take care of anyone else or a pet. (Tr. 36, 152–53.)

Plaintiff asserted that he had no problems with self-care; he prepared his own meals, did laundry, washed dishes, and swept his residence. (Tr. 153, 156.) When Plaintiff felt depressed, he would have difficulty paying attention and finishing what he had started. (Tr. 155.) He said he got depressed from stress or changes in schedule. (Tr. 158.)

Plaintiff also wrote that he had lost a job due to problems getting along with people, and specifically had been written up for insubordination. (Tr. 155.)

### 4. March 3, 2013 Disability Report (Appeals)

In this form, Plaintiff reaffirmed his basic information and information about his disability. He indicated that since his last disability report, beginning on January 30, 2013, his depression had worsened and he was having difficulty eating. (Tr. 161.)

### 5. Plaintiff's Testimony at the May 6, 2014 ALJ Hearing

At the May 6, 2014 hearing before the ALJ, Plaintiff testified that the highest level of education he had completed was ninth grade. (Tr. 33.) His most recent work was in 2007. (Tr.

34.) Plaintiff testified that he formerly worked full-time as a security guard for various companies, and briefly worked part-time as a waiter. (Tr. 34–35.) When he was terminated from his job, he was not told the reason, and he thought it might have been because he lacked confidence. (Tr. 37.) At the time of the hearing, he lived with his sister, but was able to maintain his own hygiene and self-grooming. (Tr. 36.) Plaintiff testified that his daily activities included watching television and going for walks in the park. (*Id.*) Plaintiff reported seeing both a psychiatrist and a social worker typically one to two times a month. (Tr. 36–37.)

Plaintiff testified that he felt he was unable to work because his performance would not meet appropriate standards. (Tr. 38, 40.) Specifically, he had auditory hallucinations when he got depressed, which was about two times per day, and he felt that these hallucinations might distract him at work and cause him to be unable to follow instructions. (Tr. 38, 41.) When asked about medications, he testified that the medications helped with these symptoms and that he was able to take the medications on his own without being reminded. (Tr. 38, 40.) Plaintiff testified that he got along "okay" with other people. (Tr. 38–39.)

### B. Vocational Expert Testimony

Miriam Greene, a neutral vocational expert ("VE"), also testified at the ALJ hearing. (Tr. 41.) The ALJ asked the VE to assume Plaintiff had the ability to perform work-related activities without exertional limitations, had the ability to perform the full range of simple, repetitive work (including the ability to understand, remember, and carry out simple instructions), make simple work-related decision, respond appropriately to supervision, coworkers, and usual work settings, deal with changes in routine and maintain attention and concentration, whether or not he would be able to do his past job as a security guard. (Tr. 42.) The VE responded in the negative, but answered affirmatively when asked if those limitations would allow a person to do the "full range

of unskilled work." (Tr. 41–42.) When asked if Plaintiff would be able to do any job if the ALJ found that he "would be unable to maintain attention and concentration for (INAUDIBLE) work," "had no useful ability to interact with others," "would be off task more than 10 percent of the time," was "incapable of even low-stress work," or "was unable to maintain a regular schedule," the VE responded "no" to each separate scenario. (Tr. 42–43.)

## DISCUSSION

### I.    STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act (the "Act") may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). In reviewing a final decision of the Commissioner, the Court's duty is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (alterations and internal quotation marks omitted)). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (internal citation omitted). However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). Under any circumstances, if there is substantial evidence in the record to support the

Commissioner's findings as to any fact, they are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013).

## II. ELIGIBILITY STANDARD FOR SOCIAL SECURITY DISABILITY BENEFITS

To receive DIB or SSI, claimants must be disabled within the meaning of the Act. The definition of "disabled" is the same for the purposes of receiving DIB and SSI benefits. Claimants establish disability status by demonstrating an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). The claimant bears the initial burden of proof on disability status and must demonstrate disability status by presenting medical signs and findings, established by "medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(D); *but see Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal.") (internal alterations and quotation marks omitted).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Act as set forth in 20 C.F.R. §§ 404.1520(a)(1), 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. If not, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§

404.1520(c), 416.920(c). If the impairment is not severe, the claimant is not disabled. If it is, the ALJ proceeds to the third step, which considers whether the impairment meets or equals one of the impairments listed in the Act's regulations ("Listings"). 20 CFR §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. In the context of mental impairments, this step requires an ALJ to include a specific finding with respect to the claimant's degree of limitation in each of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 404.1520a(e)(4), 416.920a(c)(3), 416.920a(e)(4).

If the ALJ determines at step three that the claimant has a listed impairment, the ALJ will find the claimant disabled. If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity" ("RFC") before moving onto steps four and five. A claimant's RFC is an assessment of "the most [the claimant] can still do despite [his or her physical or mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the fourth step, the ALJ considers whether, in light of the claimant's RFC, he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. If not, the ALJ proceeds to the fifth step, where the burden shifts to the ALJ to demonstrate that the claimant has the capacity to perform other substantial gainful work which exists in the national economy, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled and entitled to benefits. *Id.*

### III.    THE ALJ'S DECISION

On June 3, 2014, the ALJ issued a decision denying Plaintiff's claim. (Tr. 25.) The ALJ found that Plaintiff had not engaged in substantive gainful activity since November 30, 2007, the alleged onset date. (Tr. 20.) The ALJ found that Plaintiff had one medically determinable

impairment: paranoid schizophrenia. (*Id.*) However, the ALJ found that Plaintiff did not have a severe impairment because Plaintiff had the ability to perform basic work-related activities[4] for 12 consecutive months. (*Id.*) Therefore the ALJ denied Plaintiff's claim at Step Two.

The ALJ found that Plaintiff's paranoid schizophrenia could reasonably be expected to produce the alleged symptoms, but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible.

In making his credibility determination, the ALJ noted Plaintiff's hospitalization on September 18, 2012, and the September 27, 2012 report that Plaintiff was "fit and able to return to work immediately." (Tr. 21.) He gave "no weight" to the letter from LCSW Morgan and Dr. Cohen, recommending that Plaintiff be approved for SSI, because they had not cited specific vocational limitations nor explained why Plaintiff's condition had gotten worse since Dr. Cohen's report that Plaintiff was "fit and able to return to work immediately." (Tr. 22.) The ALJ also noted that their assessment was contrary to other findings, including subsequent treatment reports, and was conclusory. (*Id.*) In particular, the ALJ noted that in Dr. Cohen's November 14, 2012 report, he had reported that Plaintiff had normal functions in almost all respects (apart from hearing music). (*Id.*) At the November 14, 2012 visit, Dr. Cohen had diagnosed Plaintiff with paranoid schizophrenia, but noted that he was "improving, stable on medications." (*Id.*)

The ALJ also discussed Dr. Cohen's March 21, 2013 psychiatric medical report, again noting the many aspects of the report that showed normal functioning in many areas. (*Id.*) The ALJ noted that, according to Dr. Cohen, Plaintiff described auditory hallucinations of birdcalls, a

_____

[4] These basic work-related activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting. (Tr. 21.)

depressed mood, and constricted affect. (*Id.*) The ALJ also noted that while Dr. Cohen indicated that Plaintiff had "limited to no social interaction" and concluded that Plaintiff was "unable" to function in a work setting, the doctor did not provide specific functional limitations. (*Id.*) The ALJ gave this opinion "little weight", in light of Dr. Cohen's observations that Plaintiff's memory was intact, his judgment was not impaired, and his insight was fair, as well as in light of the treatment notes from Plaintiff's November 2012 visit. (*Id.*)

The ALJ also gave "little weight" to Dr. Cohen's medical source statement of Plaintiff's ability to perform work-related mental activities, which had asserted that Plaintiff had extreme limitations in his ability to make judgments on simple or complex work-related decisions, in his ability to understand, remember, and carry out complex instructions, and in his ability to respond appropriately to usual work situations and changes in his routine work setting; moderate limitations in his ability to understand and remember simple instructions, and in his ability to interact appropriately with the public; and marked limitations in his ability to carry out simple instructions and in his ability to interact appropriately with supervisors or coworkers. (Tr. 23–24.) The ALJ stated in a somewhat conclusory fashion that he gave this opinion little weight because it was contrary to the treatment notes which gave "a more accurate picture of [Plaintiff's] ability to function", as did Plaintiff's own testimony, which indicated that he was not as limited as Dr. Cohen had reported. (Tr. 24.)

The ALJ gave "substantial weight" to the finding of the non-examining state agency reviewers, which found that Plaintiff had no more than mild limitations in any area of mental functioning. (*Id.*) The ALJ did not adopt their recommendation for low contact work, because he found that it was inconsistent with their finding that Plaintiff had no severe impairment. (*Id.*)

The ALJ emphasized that at the hearing, Plaintiff had testified that he could travel by himself, perform activities of daily living, and spent his days watching television and going for walks in the park. (*Id.*) He noted that Plaintiff acknowledged that he had no side effects from medication and that he did not know why he was terminated from his job. (*Id.*) The ALJ further noted that although Plaintiff stated that he heard voices, he also confirmed that his medications helped, and that Plaintiff stated that he minded his own business and got along with others adequately. (*Id.*)

The ALJ briefly went through the required analysis for mental impairments. (*Id.*) He found that Plaintiff had mild limitation in daily living, social functioning, concentration, persistence and pace, and that Plaintiff had experienced no extended episodes of decompensation. (Tr. 23-24.) Thus the ALJ concluded that the "paragraph B" criteria were not satisfied. (Tr. 25.) The ALJ further found that the evidence did not establish the presence of the "paragraph C" criteria. (Tr. 24.)

## IV.     THE ALJ VIOLATED THE TREATING PHYSICIAN RULE

Plaintiff's primary argument on appeal is that Defendant violated the treating physician rule by giving Dr. Cohen and LCSW Morgan's opinions little or no weight, and by giving substantial weight to the opinion of Kleinerman, a consultative source who did not even evaluate Plaintiff in person.[5] Plaintiff also argues that the ALJ had a duty to further develop the record before disregarding the opinion of the treating physicians. The Court agrees on both counts.

---

[5] It is not clear the extent to which the ALJ relied upon the opinion of Ferruggia, the SSA Field Office representative.

**A. The ALJ Erred in According Little Weight to Plaintiff's Treating Psychiatrist and in According Substantial Weight to the Consultative Examiner**

The treating physician rule "generally requires deference to the medical opinion of a claimant's treating physician[.]" *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004); *see* 20 C.F.R. § 404.1527(c)(1) ("Generally, [the Commissioner] give[s] more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). According to SSA regulations, the Commissioner will give "controlling weight" to "a treating source's medical opinion on the issue(s) of the nature and severity of ... impairment(s) [so long as the opinion] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). Medically acceptable clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [a]s an essential diagnostic tool." *Green–Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir.2003) (citation omitted).

The preference for a treating physician's opinion is generally justified because "[such] sources are likely to be [from] the medical professionals most able to provide a detailed, longitudinal picture of [the Plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran*, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2), now codified at 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not afford "controlling weight" to opinions from treating physicians, he needs to consider the following factors: (1) "the frequency of examination and the length, nature and extent of the treatment relationship;" (2) "the evidence in support of the

opinion:" (3) "the opinion's consistency with the record as a whole;" and (4) "whether the opinion is from a specialist." *Clark*, 143 F.3d at 188; *accord Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir.2008).  Although "[t]he ALJ is not required to explicitly discuss the factors," "it must be clear from the decision that the proper analysis was undertaken." *Elliott v. Colvin*, 13-CV-2673, 2014 WL 4793452, *15 (E.D.N.Y. Sept. 24, 2014).

Furthermore, when a treating physician's opinions are repudiated, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir.2004) (per curiam); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999); 20 C.F.R. § 404.1527(d)(2) (stating that the Social Security agency "will always give good reasons in [its] notice of determination or decision for the weight [given to a] treating source's opinion") (emphasis added).  "The failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand." *See Burgin v. Astrue*, 348 F. App'x 646, 648 (2d Cir. 2009) (quoting Halloran, 362 F.3d at 33 (stating that the Second Circuit will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and ... will continue remanding when [the Second Circuit] encounter[s] opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." (changes in original omitted))).

The ALJ erred in assigning little weight to Dr. Cohen's and LCSW Morgan's observations and opinions.  Although he was correct that Dr. Cohen and LCSW Morgan's October 11, 2012 letter did not provide sufficient information to support its conclusion that Plaintiff should be awarded SSI benefits, both Dr. Cohen and LCSW Morgan continued to treat Plaintiff, and offered more in depth opinions in the following months.  Dr. Cohen reported in March 2013 that he had

been treating Plaintiff monthly since the previous September, and Plaintiff met with LCSW Morgan at least one more time during that time-span.

The ALJ's conclusion that Dr. Cohen's findings of extreme, marked, and moderate limitations were "contrary to the treatment notes" is not supported by substantial evidence. Dr. Cohen found that Plaintiff had extreme limitations in the ability to make judgments on simple work-related decisions, in his ability to understand, remember, and carry out complex instructions, in his ability to make judgments on complex work-related decisions, and in his ability to respond appropriately to usual work situations and to changes in a routine work setting. He found marked limitations in Plaintiff's ability to carry out simple instructions and in his ability to interact appropriately with supervisors and co-workers, and moderate limitations in his ability to interact appropriately with the public. The ALJ does not explain which portions of the "treatment notes" contradicted these findings. The observances he discussed, such as that Plaintiff was alert and oriented, that his memory and judgment were not impaired, and that Plaintiff could care for himself, do not necessarily contradict Dr. Cohen's findings about Plaintiff's work-related limitations because they address different, albeit related, topics. At the least, the ALJ had a duty to further develop the record to reconcile any apparent contradictions in Dr. Cohen's findings, as detailed in Part IV(B), *infra*.

Furthermore, the ALJ did not discuss the elements of Dr. Cohen's treatment notes that corroborated the limitations he found, such as Plaintiff's depressed mood, auditory hallucinations, "below average" sensorium and intellectual functions with regard to information, and limited to no social interaction. Particularly in light of the VE's finding that a person with Plaintiff's characteristics who "had no useful ability to interact with others," would not be able to work, the ALJ was required to explain why he did not credit Dr. Cohen's finding regarding Plaintiff's

"limited to no social interaction." *See Nusraty v. Colvin*, 15-CV-2018, 2016 WL 5477588, *11 (E.D.N.Y. Sept. 29, 2016) (finding that "the ALJ's conclusion that [the treating physician's] opinion is inconsistent with his own notes and with the medical record is not supported by substantial evidence because the ALJ failed to consider the evidence in the record that is consistent with [the treating physician's opinion]"); *Poles v. Colvin*, 14-CV-6622, 2015 WL 6024400, at *4 (W.D.N.Y. Oct. 15, 2015) (finding that because the ALJ did not discuss records that undermined his conclusion, that conclusion was "improperly based on a selective citation to, and mischaracterization of, the record"); *Arias v. Astrue*, 11-CV-1614, 2012 WL 6705873, at *2 (S.D.N.Y. Dec. 21, 2012) ("The ALJ may not simply ignore contradictory evidence. When the record contains testimony tending to contradict the ALJ's conclusion, the ALJ must acknowledge the contradiction and explain why the conflicting testimony is being disregarded.")

Finally, LCSW Cohen's letter stating that Plaintiff was "fit and able to return to work immediately" does not deserve substantial weight in the absence of any information regarding whether LCSW Cohen actually examined Plaintiff, the extent or nature of that examination, or the context of the letter, *e.g.*, whether it was a standard part of a patient's discharge, especially given the subsequent contrary assessments by Plaintiff's treating psychiatrist and social worker.

The Court further finds that the ALJ erred in assigning "[s]ubstantial weight" to medical consultant Kleinerman's opinion, in light of the fact that Kleinerman did not examine Plaintiff and relied only on Dr. Cohen's treatment notes. The opinion of a consultative physician "who only examined a Plaintiff once, should not be accorded the same weight as the opinion of [a] Plaintiff's treating [physician]." *Anderson v. Astrue*, 07 CV 4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug.28, 2009) (citing *Spielberg v. Barnhart*, 367 F.Supp.2d 276, 282–83 (E.D.N.Y.2005)). Plaintiff's treating physician drew one conclusion from his own treatment notes; the medical

consultant reviewed the same notes and drew a different conclusion. The law is clear that in such a situation, an ALJ is not permitted to credit the consultative opinion without "comprehensively set[ting] forth" "good reasons." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir.2004); *see also Burgin v. Astrue*, 348 F. App'x 646, 648 (2d Cir. 2009) ("The failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand."). The ALJ plainly failed to do that here; indeed, he offered *no* explanation for according substantial weight to Kleinerman's opinion. He merely repeated Kleinerman's findings, and found them to be "consistent with a finding that [Plaintiff] has no severe impairment." (Tr. 23.) Such an explanation is conclusory and woefully insufficient.

### B. The ALJ Had a Duty to Further Develop the Record

To the extent that the ALJ concluded that the record contradicted Dr. Cohen's and LCSW Morgan's findings, he had an "affirmative duty" to develop the record and "should have followed up with [the treating physicians] to request supporting documentation or to obtain additional explanations for [their] findings." *Nusraty*, 2016 WL 5477588, at *13. *See also Ahisar*, 14-CV-4134, 2015 WL 5719710, at *12 (E.D.N.Y. Sept. 29, 2015) ("[I]f a physician's report is believed to be insufficiently explained, lacking in support, or inconsistent with the physician's other reports, the ALJ must seek clarification and additional information from the physician, as needed, to fill any clear gaps before rejecting the doctor's opinion." (quotations omitted)).

Here, the ALJ essentially concluded that Dr. Cohen's report was "inconsistent with the physician's other reports," *id.*, and thus he had a duty to seek additional clarification and information. The Court finds that this duty was especially clear in light of the fact that the opinion the ALJ *did* credit—Kleinerman's—was based on the reported observations and treatment notes of Dr. Cohen. Thus, the Court finds it inexplicable that the ALJ would not have sought clarification

from Dr. Cohen regarding the apparent discrepancy between Dr. Cohen's observations and his diagnosis and conclusions.

## CONCLUSION

For the reasons set forth above, the Court DENIES the Commissioner's motion for judgment on the pleadings and GRANTS Plaintiff's cross-motion.  The Commissioner's decision is remanded for further consideration and new findings consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: Brooklyn, New York
April 3, 2017